IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| TERI LEE, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| VS ] | |
| ] | Case No. 3:10-CV-00809 |
| EQUIFIRST CORP., ] | JUDGE TRAUGER |
| HOMEQ SERVICING CORP., ] | |
| QUANTUM SERVICING CORP., ] | JURY DEMAND |
| SUTTON FUNDING, LLC, ] | |
| ROOSEVELT MORTGAGE ACQUISITION CO., ] | |
| & WELLS FARGO, N.A. ] | |
| ] | |
| Defendants. ] | |

## AMENDED COMPLAINT

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff requested leave of this Court to amend her original complaint filed on July 30, 2010 in the Circuit Court of Davidson County, Tennessee. Leave to Amend the Complaint was requested by the Plaintiff and granted by this Court at the first Initial Case Management Conference on November 15, 2010. Plaintiff hereby amends her original complaint and would show, among other civil wrongs alleged infra, that the foreclosure of her home was wrongful and makes the following complaint:

1. Plaintiff, Teri Lee, is a citizen and resident of Davidson County in Nashville, Tennessee.

2. Defendant, Equifirst Corporation ("Equifirst"), is a corporation with its principal place of business located in North Carolina. Its registered agent and address for service

of process in Tennessee is: CT Corporation System, 800 S. Gay St., Suite 2021, Knoxville, TN 37929.

3. Defendant, HomEq Servicing Corporation ("HomEq"), is a corporation formed under the laws of New Jersey, with its principal place of business in California at 4837 Watt Avenue, North Highlands, CA 95660. Upon information and belief, it currently has no registered agent for service of process in Tennessee.

4. Defendant, Quantum Servicing Corporation ("Quantum"), is a corporation formed under the laws of Delaware, with its principal place of business in Tampa, Florida. Its registered agent and address for service of process in Tennessee is: National Registered Agents, Inc., 2300 Hillsboro Road, Suite 305, Nashville, TN 37212.

5. Defendant, Sutton Funding, LLC, ("Sutton") is a limited liability company formed under the laws of Delaware, with its principal place of business in New York. Its registered agent and address for service of process in Tennessee is: CT Corporation System, 800 S. Gay St., Suite 2021, Knoxville, TN 37929.

6. Defendant, Roosevelt Mortgage Acquisition Company, a Statutory Trust, ("Roosevelt") is a corporation formed under the laws of Delaware, with its principal place of business in New York. Its registered agent and address in Tennessee is: Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203.

7. Upon information and belief, Defendant, Barclays Bank PLC, ("Barclays") is a corporation formed under the laws of Delaware with its principal place of business in New York. Its registered agent and address in Tennessee is: CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929.

## Facts

8. Teri Lee, Plaintiff, Borrower, executed a Deed of Trust and two Promissory Notes on March 2, 2007 with Equifirst Corporation as "Lender," to purchase her residence at 8244 Persia Way, Nashville, Tennessee 37211.

9. To purchase the property, Ms. Lee executed two promissory notes. The primary loan was in the amount of $152,000.00, while the other loan was in the amount of $38,000.00. For the purpose of this lawsuit, the debt of $152,000.00 will be referred to as the "primary loan."

10. Ms. Lee purchased the property for $190,000.00 and closed on March 2, 2007. Two months later, on May 18, 2007, the Davidson County Assessor of Property sent Ms. Lee notice that the property was appraised at $139,500.00 on January 1, 2007.

11. At the origination date of the loan, upon information and belief, Equifirst was the holder of both Promissory Notes and owned the servicing rights to both loans.

12. Upon information and belief, on May 1, 2007, Equifirst Corporation assigned the servicing rights of the Primary Loan to HomEq Servicing Corporation. On May 14, 2007, HomEq sent Ms. Lee a "Validation of Debt" Letter listing Equifirst as still being the current creditor.

## Creditor Confusion, MERS & the Original Note

13. After a reasonable investigation by the Plaintiff and after reviewing all of the Defendants' Rule 26 Initial Disclosures, excluding disclosures from Barclays who was recently added as a Defendant herein, Plaintiff still has no reliable facts, information or knowledge as to when any of the Defendant creditors purchased or sold her primary loan,

with the exception of Equifirst. However, Plaintiff has no reliable facts, information or knowledge as to when Equifirst sold her primary loan.

14. Plaintiff has two "Validation of Debt" letters sent by HomEq on May 14, 2007. Both letters identify Equifirst as "the current owner of the loan" and state that HomEq was servicing the account on behalf of Equifirst.

15. Due to the fragmented chain of title and the Defendants' use of the Mortgage Electronic Registering Service ("MERS"), Plaintiff would show that her primary loan was part of a securitized asset backed trust and bundled together with other mortgage loans.

16. Because Plaintiff has no reliable information regarding a date of sale of her primary loan at any point during the life of the loan, Plaintiff would show that all of her creditors named herein as Defendants (Equifirst, Sutton, Barclays, and Roosevelt) are vicariously liable for the gross negligence committed in the mishandling of Plaintiff's loan by the two Defendant servicers, Homeq and Quantum.

17. Had the Defendant creditors recorded their transfers of the Deed and Note in the Davidson County Registry of Deeds, this confusion would have been avoided. To further illustrate the mystery of Plaintiff's creditors' identities, a communication history produced by HomEq and Sutton shows an entry by a HomEq employee on February 19, 2009, that placed Plaintiff's home in foreclosure and listed the primary loan's "SR LIEN HOLDER (Name Not Available)." The same communication history states on February 20, 2009, "INEVESTOR 394 EQUIFIRST BBPLC FORECLOSURE IN THE NAME OF BARCLAYS CAPITAL."

18. Additionally, MERS is listed on the primary loan's Deed of Trust as the "beneficiary under this security instrument" and "acting solely as a nominee for Lender and Lender's successors and assigns."

19. Because of MERS, Plaintiff was unable to determine who her creditor was throughout the entire life of the loan. Members of MERS do not publicly list this information in the MERS system, which they use to avoid listing the chain of title in the county registry.

20. Because of MERS, Plaintiff was also unable to identify the seller, or which creditor held her note at the time of foreclosure and/or sale. Plaintiff would show upon information and belief that the seller or owner of the note of her home failed to present or physically transfer the original note to buyer, Wells Fargo, N.A.

21. Further adding to the confusion, inexplicably, on July 15, 2010, almost four months after her home was sold in foreclosure, Plaintiff received a notice from UBS Special Servicing Group that the servicing rights to her loan had been assigned to Rushmore Loan Management Services LLC. This blunder is another product of the Defendants' use of MERS and provides insight into their past and present confusion with regards to her loan account.

## Wells Fargo, N.A.

22. Though Wells Fargo is listed as a Defendant on Equifirst's Amended Notice of Removal, Plaintiff asserts no wrongful conduct on behalf of Wells Fargo. As the purchaser of the subject property at foreclosure sale, Wells Fargo is a required party under Rule 19 of the Federal Rules of Civil Procedure.

23. Upon information and belief, Wells Fargo bought Plaintiff's home at the foreclosure sale on March 24, 2010. Wells Fargo subsequently brought a detainer action against Plaintiff for possession of the subject property. Plaintiff then appealed the order entered by the Davidson County Court of General Sessions to Davidson County Circuit Court (Case No. 10C-2574) and filed a Motion to Consolidate the pending appeal with the original complaint in this matter filed in Circuit Court (Case No. 10C-2947). The Motion to Consolidate was granted and Defendant Equfirst subsequently removed the case to this Court.

## PLAINTIFF'S ALLEGATIONS

### I. Negligently Placed Insurance

24. During HomEq's servicing of Plaintiff's loan, HomEq employees continuously forced over-priced insurance policies on Teri Lee's property when she already had her own policy in place.

25. The Deed of Trust required her to have a hazard insurance policy in place for the property, which she kept current for the duration of loan.

26. Upon information and belief, the unnecessary hazard insurance policies purchased by HomEq were charged to Ms. Lee's account as "Escrow Advances."

27. HomEq charged one policy to her account on May 13, 2008 in the amount of $2,660.00. Ms. Lee already had hazard insurance in place at the time.

28. HomEq charged another policy to her account on October 14, 2008 in the amount of $2,100.00. Again, Ms. Lee already had a valid insurance policy in place at the time.

29. HomEq owed a duty of reasonable care to Plaintiff, Teri Lee, not to charge her for unnecessary insurance when she had a policy in place. A reasonable attempt by HomEq

to discover whether or not she had a policy in place would have prevented these duplicative charges, especially because HomEq knew or should have known who Ms. Lee's insurer was.

30. Equifirst, one of the creditors of the loan and one of HomEq's principals, is vicariously liable for the negligence of HomEq in charging these unnecessary policies.

31. Sutton, one of the creditors of the loan and one of HomEq's principals, is vicariously liable for the negligence of HomEq in charging these unnecessary policies.

32. Barclays, one of the creditors of the loan and one of HomEq's principals, is vicariously liable for the negligence of HomEq in charging these unnecessary policies.

33. Roosevelt, one of the creditors of the loan and one of HomEq's principals, is vicariously liable for the negligence of HomEq in charging these unnecessary policies.

34. The charging of duplicative insurance policies on Plaintiff Lee's account were negligent acts that caused her to fall behind on her loan payments, resulting in further late charges and fees, helped facilitate the eventual wrongful foreclosure of her home, and caused her severe emotional distress. The wrongful insurance charges, because they contributed to delinquency of Plaintiff's account, also proximately caused the harm to Plaintiff's credit scores.

## II. Negligence re: Forbearance Agreement

35. On February 25, 2009, Ms. Lee received a Notice of Acceleration of her primary loan and initiation of foreclosure proceedings from the law firm of Shapiro & Kirsch, LLC, which identified the current creditor to be Sutton Funding, LLC. On March 6, 2009, Ms. Lee then received a Notice of the Foreclosure Sale from Shapiro & Kirsch that

was set for April 1, 2009. Upon information and belief, during the month of March of 2009, Ms. Lee had a nervous breakdown over the phone with a HomEq employee.

36. HomEq provided Ms. Lee with one option to save her home, sign a Forbearance Agreement, which was offered to her on March 27, 2009. Under this agreement, Ms. Lee had to pay $3,500.00 and accept the terms immediately.

37. To save her home, Ms. Lee signed the Forbearance Agreement with HomEq on March 27, 2009. Pursuant to the agreement, Ms. Lee paid the amount of $3,500.00 that same day. The agreement also set a new monthly payment amount of $1,936.81 for April through November of 2009, which HomEq agreed would bring her account current. Upon information and belief, there appears to be no basis in fact or information arising out of the promissory note or trust agreement that would require Plaintiff to have paid the $3,500.00 fee.

38. After accepting the first month's payment from Ms. Lee in the amount of $1,936.81 pursuant to their Forbearance Agreement, HomEq transferred the servicing rights to the loan on May 15, 2009 to Quantum Servicing Corporation.

39. Section 16 of the Forbearance Agreement makes the contract "binding upon the parties hereto and their successors and assigns." Therefore, the Forbearance Agreement entered into by HomEq and Teri Lee was assigned with, and inseparable from, the servicing rights of the loan transferred to Quantum.

40. On May 22, 2009, Quantum sent Ms. Lee a "Validation of Debt" Letter informing her that she was in arrears of approximately $6,985.30, with no mention of the Forbearance Agreement. A different company, "Roosevelt Mtg Aquisition," was listed as the current creditor. Upon receipt of this letter, Ms. Lee called Quantum customer

service for an explanation of the amount, and the Quantum representative could not offer her any explanation of what the amount represented.

41. The first "Mortgage Statement" sent the same month to Ms. Lee by Quantum listed the "Regular Payment" amount of $1,099.47, from the original Promissory Note, plus the past due amount, with no trace or mention of the Forbearance Agreement or its agreed upon amount of $1,936.81.

42. Therefore, because Ms. Lee had paid such a large amount in reliance on the Forbearance Agreement, she was unprepared and incapable of paying the new debt claimed, yet unexplained, by Quantum.

43. As a result, Plaintiff's account was charged more late fees and still unexplained escrow and corporate advances, causing her to fall further behind on payments.

44. Plaintiff would show upon information and belief that HomEq breached its duty of ordinary care owed to Plaintiff by failing to notify Quantum of the Forbearance Agreement upon HomEq's transfer of the servicing rights to Quantum.

45. Plaintiff would show that Sutton Funding, LLC, who was listed by Shapiro & Associates as the note holder on February 25, 2009, is vicariously liable for the acts or omissions of its agent, HomEq, in failing to notify Quantum of the Forbearance Agreement entered into with Plaintiff.

46. Plaintiff would show that Equifirst is vicariously liable for the acts or omissions of its agent, HomEq, the company hired by Equifirst to service Plaintiff's loan, and also liable for acts and omissions of its agent's employees.

47. Plaintiff would show that Barclays is vicariously liable for the acts or omissions of its agent, HomEq, the company hired by Barclays to service Plaintiff's loan, and also liable for acts and omissions of its agent's employees.

48. Plaintiff would show that Roosevelt is vicariously liable for the acts or omissions of its agent, HomEq, the company hired by Roosevelt to service Plaintiff's loan, and also liable for acts and omissions of its agent's employees.

49. Plaintiff would further show that Quantum breached its duty of ordinary care owed to Plaintiff by not inquiring into whether there was a forbearance agreement in place with the borrower and failing to discover this information upon Plaintiff's telephone inquiry.

50. Additionally, Plaintiff would show that Quantum breached its duty of ordinary care in failing to provide adequate or competent customer assistance to Plaintiff, when she called to inquire about the "Validation of Debt" letter, the amount she disputed, and the Forbearance Agreement entered into with HomEq.

51. Plaintiff would show that Roosevelt Mortgage Acquisition Company ("Roosevelt") is vicariously liable for the acts and omissions of its loan servicer, Quantum, and Quantum's employees, which listed Roosevelt as the current creditor on its May 22, 2009 "Validation of Debt" letter.

52. Plaintiff would show that Defendant creditors Equifirst, Sutton, and Barclays are also vicariously liable for the acts and omissions of their loan servicer, Quantum, and Quantum's employees.

53. The foregoing negligence and reckless misconduct on the part of the Defendant servicers, HomEq and Quantum, and their agents and employees has caused Plaintiff

severe emotional distress, for which Plaintiff has sought medical attention and received prescription anti-anxiety medication.

54. Additionally, the foregoing negligence and reckless misconduct on the part of the Defendant servicers and their agents and employees caused Plaintiff to incorrectly fall behind on her loan payments and eventually caused the wrongful foreclosure of her home.

### III. RESPA: Violations

55. In November of 2009, Quantum rejected a loan payment offered over the phone by Ms. Lee. Then, in December of 2009, Quantum continued to send her letters that her account was delinquent. Teri Lee sent Quantum a letter on December 18, 2009 in response to one of these letters, stating that she lost her job but her father would pay what she owed.

56. On December 31, 2009, the law firm of Wilson & Associates, P.L.L.C. ("Wilson & Associates"), hired by Quantum, sent Ms. Lee a Notice of Foreclosure and Acceleration of her loan. The notice failed to list the current creditor, or note holder. The notices only named the apparent servicing company, Quantum.

57. Before Plaintiff's home was sold, she sent a series of written, formal requests for information. These faxed letters were "qualified written requests" pursuant to the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2605(e)(1). The federal statute imposes a duty upon loan servicers to timely respond to a "qualified written request" from a borrower. 12 U.S.C. § 2605(e)(2). Under the Act, a "qualified" written request is:

> "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)

58. On January 14, 2010, Ms. Lee faxed a letter to the Quantum Loan Modification Department regarding questions about HomEq's accounting and also listing the contact information of her HUD Counselor. Ms. Lee never received a response to her request from Quantum.

59. On January 28, 2010, Ms. Lee faxed a letter to Wilson & Associates, requesting a detailed history of payments on the mortgage, specifically seeking explanation for "unapplied funds" and payments applied to "other" and those titled "repay of escrow advance."

60. On February 1, 2010, Ms. Lee faxed another letter to Wilson & Associates asking for more detailed information on her Quantum loan. On the same date, she faxed a revised "Dispute Debt Letter."

61. On February 1, 2010, Wilson & Associates sent Ms. Lee a letter saying only that they were awaiting their client's response.

62. On the 2nd and 3rd day of February, 2010, HomEq, the former servicer, sent Ms. Lee a letter saying that she still owed them $16.28 and $2,040.06 in "Advances" on her account.

63. On February 9, 2010, Wilson & Associates sent Ms. Lee a letter stating that her debt with Quantum was valid with a ledger of payment history that answered none of the questions she posed in her qualified written request. Further, Wilson & Associates stated that they would only accept "front and back copies of checks and/or money orders" as

documentation for proof of incorrect payment history. Ms. Lee had made the majority of her loan payments since 2007 over the phone by e-transfer, which was acceptable under the Deed of Trust, so she had no such documentation. Wilson & Associates went on to say: "Bank statements are not sufficient for research purposes. If said documentation is not provided to us, we will assume that it does not exist. Per your request, the original lender was Equifirst Corporation." The letter also failed to address the specifics raised in her qualified written requests.

64. On February 23, 2010, Quantum sent Ms. Lee a letter stating that all payments were applied correctly, addressing none of the questions she raised in any of her previous "qualified written requests."

65. On March 19, 2010, Ms. Lee again faxed a letter with the caption "qualified written requests" seeking detailed information to Wilson & Associates and Quantum Servicing Corporation.

66. On March 19, 2010, Wilson & Associates sent a letter to Teri Lee stating that their position had not changed and provided none of the information she requested.

67. On March 23, 2010, Ms. Lee again faxed a letter captioned "qualified written requests" to Wilson & Associates and Quantum Servicing Foreclosure Department. Neither Wilson & Associates nor Quantum provided her any of the information she requested in response.

68. On March 24, 2010, Ms. Lee's residence was sold at foreclosure sale.

69. In conclusion, from January 14, 2010 to March 23, 2010, Plaintiff sent six (6) "qualified written requests" under RESPA. None of these requests were adequately responded to as required by a servicer under 12 U.S.C. 2605(e)(2).

70. Under 12 U.S.C. §2605(f) of RESPA, defendants are liable to individuals in an amount equal to the sum of any actual damages to the borrower as a result of the these failures to respond and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance, not to exceed $1,000."

71. Plaintiff would show that Quantum, in the servicing and foreclosure of Plaintiff's loan, is liable for its failure to adequately respond under 12 U.S.C. 2605(e) to each "qualified written request" received.

72. Plaintiff would show that Quantum is vicariously liable for the acts and omissions of its agent, Wilson & Associates, for its failure to adequately respond under 12 U.S.C. 2605(e) to each "qualified written request" received.

73. Aggregately, Plaintiff would show that the non-compliance with 12 U.S.C. 2605(e) on the part of Quantum and its agent, Wilson & Associates, amounted to a "pattern of noncompliance" under § 2605(f).

74. This pattern of non-compliance in response to Plaintiff's specific inquiries in her qualified written requests proximately caused Plaintiff actual damages in the form of additional emotional distress.

75. Additionally, under 12 U.S.C. 2605(e)(3), upon receiving a qualified written request from a debtor, the loan servicer must halt all negative reporting for at least sixty (60) days to any credit agency regarding any overdue payment. Therefore, upon receipt of the first qualified written request from Plaintiff on January 14, 2010, Defendant Quantum and its agent, Wilson & Associates, should have ceased all negative reporting on Plaintiff's credit report regarding any overdue payment for a sixty (60) day period.

76. The failure by Quantum and its agent, Wilson & Associates, to halt negative credit reporting on Plaintiff's account after January 14, 2010 caused damage to Plaintiff's credit score. Therefore, Quantum is directly and vicariously liable for the actual damage to Plaintiff's credit during the sixty (60) day period beginning on January 14, 2010.

## **Damages**

Due to the reckless and grossly negligent mishandling of Plaintiff's loan account by her creditors, loan servicers, and their agents, successors and assigns, and their violations of RESPA, 12 U.S.C. § 2605, Plaintiff has suffered the following damages:

a) Severe emotional distress that has manifested itself through constant anxiety, for which she has seen a doctor and received medication;

b) Permanent damage to her credit rating from the negative reporting caused by negligent handling of her loan that resulted in multiple foreclosures;

c) Economic damages resulting from the breach of the forbearance agreement she entered into to save her home;

d) Actual damages to her credit score under RESPA, 12 U.S.C. § 2605(f), and statutory damages of $1,000.00 for each violation thereof due to Quantum and its agents pattern of non-compliance;

e) The loss of her home at 8244 Persia Way, Nashville, TN 37211, presumably valued at $190,000.00 per the original appraisal;

f) Punitive damages due to the reckless mishandling of Plaintiff's loan by the loan servicers, HomEq and Quantum, who serviced Plaintiff's primary loan for their principals and Plaintiff's creditors: Equifirst, Sutton, Barclays, and

Roosevelt, who are all vicariously liable for the reckless conduct of their servicers.

WHEREFORE, PLAINTIFF PRAYS:

1) For process to issue and be served upon the Defendants requiring Defendant to answer the allegations hereof;

2) For damages resulting from the grossly negligent and reckless mishandling of Plaintiff's loan, including but not limited to late fees already paid, the damage to her credit score, severe emotional distress, foreclosure costs and fees, and the loss of her home, and for damages resulting from the reckless acts by Defendants in mishandling Plaintiff's loan; for a total of $1,500,000.00 in combined compensatory and punitive damages;

3) For reimbursement of court costs;

4) For reasonable discretionary costs and attorney's fees as may be allowed;

5) For such other and further relief as the court may deem necessary.

Respectfully submitted,

/s/ Charles W. Faquin
Thompson Law Group, PLLC
Charles W. Faquin # 029008
Christopher Kim Thompson #015895
301 S. Perimeter Park Drive
Suite 218
Nashville, TN 37211
(615) 832-2335
fax (615) 832-2235
cfaquin@tlgpllc.com

CERTIFICATE OF SERVICE

      Undersigned counsel hereby certifies that a copy of the foregoing Amended Complaint has been served upon the following counsel by the Court's electronic filing system or by certified U.S. Mail, return receipt requested, this 3rd day of December, 2010:

Kenneth P. Jones # 016168
BOURLAND, HEFLIN, ALVAREZ,
MINOR & MATTHEWS, PLLC
5400 Poplar Avenue, Suite 100
Memphis, TN 38119
kenjones@bhammlaw.com
*Attorney for Equifirst Corp.*

Thomas K. Potter, III # 024857
James A. Haltom # 028495
BURR & FORMAN LLP
700 Two American Center
3102 West End Avenue
Nashville, TN 37203
*Attorneys for Quantum Servicing Corp. and Roosevelt Mortgage Acquisition Co.*

Rik S. Tozzi, Esq.
Janine L. Smith, Esq.
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
*Attorneys for Quantum Servicing Corp. and Roosevelt Mortgage Acquisition Co.*

Worrick G. Robinson, IV, Esq.
Joanna C. Gordon, Esq.
ROBINSON, REAGAN & YOUNG, PLLC
260 Cumberland Bend Drive
Nashville, TN 37228
*Attorneys for Homeq Servicing Corp., and Sutton Funding, LLC*

James A. DeLanis
BAKER, DONELSON,
BEARMAN, CALDWELL
& BERKOWITZ, PC
Baker Donelson Center
Suite 800
211 Commerce Street
Nashville, TN 37201
*Attorney for HomEq & Sutton*

Wells Fargo Bank, N.A.
464 California Street
San Francisco, CA 94104
(cert. U.S. Mail)

Wells Fargo Bank, N.A.
c/o Corporation Service Co.
2908 Posten Avenue
Nashville, TN 37203
(cert. U.S. Mail)

      /s/ Charles W. Faquin