IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERI LEE, ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:10-cv-809 |
| ) | Judge Trauger |
| EQUIFIRST CORP., HOMEQ SERVICING ) | |
| CORP., QUANTUM SERVICING CORP., ) | |
| SUTTON FUNDING, LLC, ROOSEVELT ) | |
| MORTGAGE ACQUISITION CO., and ) | |
| WELLS FARGO, N.A., ) | |
| ) | |
|     **Defendants.** ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by defendant EquiFirst Corp. (Docket No. 64), to which the plaintiff has filed a response (Docket No. 68), and in support of which the defendant has filed a reply (Docket No. 74). For the reasons discussed below, the defendant's motion will be denied.

## BACKGROUND

Plaintiff Teri Lee took out two mortgage loans, the larger of which was for $152,000 (the "Primary Loan"), to purchase her residence in Nashville, Tennessee.[1] Eventually, she missed payments on the Primary Loan. This action arises from the resulting foreclosure.

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of undisputed facts (Docket No. 64, Ex. 1; Docket No. 68, Ex. 1). The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

At the March 2, 2007 closing of the plaintiff's home purchase, defendant EquiFirst Corp. ("EquiFirst") held the promissory notes and the servicing rights to both loans. The Amended Complaint alleges that, on May 1, 2007, EquiFirst assigned the servicing rights of the loans to defendant HomEq Servicing Corp. ("HomEq"). (Docket No. 50 ¶ 12.)

The plaintiff's deed of trust required her to carry an insurance policy on her property, and she allegedly maintained sufficient coverage for the duration of the loans. (*Id.* ¶ 25.) The plaintiff alleges that on two occasions – May 13, 2008 and October 14, 2008 – HomEq charged her for additional, unnecessary insurance policies, because it failed to discover that she already had insurance. (*Id.* ¶¶ 27-28.) These charges totaled approximately $4,700, and this expense allegedly caused the plaintiff to fall behind on her loan payments. (*Id.* ¶¶ 27-28, 34.)

On February 25, 2009, the plaintiff allegedly received a notice of acceleration of the Primary Loan from a law firm, identifying the current creditor as defendant Sutton Funding, LLC ("Sutton"). (*Id.* ¶ 35.) The next month, Lee received a notice of foreclosure from the same law firm. (*Id.*)

At that point, the plaintiff called HomEq, which allegedly offered her a forbearance agreement. Under the proposed plan, the plaintiff would immediately pay $3,500 and would then pay increased monthly payments until November 2009, at which point her account would be current. (*Id.* ¶¶ 36-37.) The plaintiff alleges that she accepted these terms and signed an agreement (the "Forbearance Agreement") with HomEq on March 27, 2009. (*Id.*) The agreement provided that it would be binding upon the parties' "successors and assigns." (*Id.* ¶ 39.)

On May 15, 2009, after accepting the plaintiff's up-front payment and first increased monthly payment, HomEq allegedly transferred the servicing rights for the Primary Loan to defendant Quantum Servicing Corp. ("Quantum"). (*Id.* ¶ 38.) Shortly thereafter, the plaintiff received a "Validation of Debt" letter from Quantum, listing defendant Roosevelt Mortgage Acquisition Co. ("Roosevelt") as the current creditor. (*Id.* ¶ 40.) The letter informed her that she was more than $6,900 in arrears, and it did not reference the Forbearance Agreement. (*Id.* ¶ 40.)

Quantum allegedly never recognized the Forbearance Agreement. The plaintiff claims that the amounts she paid HomEq under the Forbearance Agreement left her unable to pay the balance that Quantum asserted was due. (*Id.* ¶¶ 42-43.) Ultimately, on March 24, 2010, after several months of communications with Quantum and its law firm, the plaintiff's home was sold at a foreclosure sale.

The plaintiff asserts three causes of action: (1) negligence by HomEq for charging her for unnecessary insurance; (2) negligence by HomEq and Quantum for failing to ensure that the Forbearance Agreement was honored when the servicing of her loan was transferred between those companies; and (3) violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, by Quantum, for failing to respond to several "qualified written requests" in the months before the foreclosure.[2] (*Id.* ¶¶ 24-76.) The plaintiff alleges that EquiFirst is vicariously liable, as the creditor of the Primary Loan and as the principal of HomEq

---

[2] The Amended Complaint does not explicitly set out a claim for wrongful foreclosure, although it does allege that the defendants' negligence "helped facilitate the eventual wrongful foreclosure of her home." (Docket No. 50 ¶ 34; *see also id.* ¶ 54.)

and Quantum, for the first two causes of action. (*Id.* ¶¶ 30, 46, 52.)

The deed of trust for the plaintiff's property was recorded by Mortgage Electronic Registering Service ("MERS"), of which all of the defendants are members. This allegedly made it difficult for the plaintiff to determine which defendant was the creditor for the Primary Loan at any given time. (Docket No. 50 ¶ 20.) The plaintiff alleges that "[m]embers of MERS do not publicly list this information in the MERS system, which they use to avoid listing the chain of title in the county registry." (*Id.* ¶ 19.)

Defendant EquiFirst previously filed a Motion to Dismiss, arguing, in relevant part, that it sold both of the plaintiff's mortgage loans before any of the servicers' alleged negligence had occurred. In support of that motion, the defendant filed the declaration of Karen L. Stacy, an EquiFirst Vice President. (Docket No. 18.) In response, the plaintiff requested more time for discovery.

In ruling on the Motion to Dismiss, the court declined to consider the defendant's extrinsic evidence. (Docket No. 28 at 7 n.2.) The court held that EquiFirst, as mortgagee, could be held vicariously liable for actions taken by HomEq, as servicer. (*Id.* at 8.) It also found that the plaintiff's initial Complaint contained sufficient allegations that EquiFirst was the creditor when HomEq charged the plaintiff for insurance. (*Id.* at 6-7.) There were no allegations, however, suggesting that EquiFirst was the creditor after February 2009; thus, the court dismissed all claims against EquiFirst, except for the negligence claim related to insurance. (*Id.* at 7.)

The court stated that, "if the evidence ultimately shows that EquiFirst did sell the loans in

March 2007, then [EquiFirst] will not be held liable for actions taken by the servicer in 2008." (*Id.* at 8.) It further noted that, "[i]f discovery ultimately shows that EquiFirst owned the loan at a later date, the plaintiff may move to amend her Complaint as necessary to re-assert the relevant claims against EquiFirst." (*Id.* at 7 n.3.) The plaintiff did subsequently file an Amended Complaint, which, as mentioned above, alleges that EquiFirst is vicariously liable for HomEq's negligence regarding the insurance and for HomEq's and Quantum's negligence in handling the Forbearance Agreement.

EquiFirst has now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Relying exclusively on the previously filed declaration of Karen L. Stacy, the defendant once again argues that it was not the creditor on the Primary Loan when the servicers' alleged negligence occurred.

## ANALYSIS

**I.   Summary Judgment Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]."

*Moldowan*, 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. EquiFirst's Sale of the Loans

The instant dispute boils down to the factual issue of when, exactly, EquiFirst sold the plaintiff's loans. The defendant argues that Karen L. Stacy's declaration shows that it sold the loans on March 30, 2007, so it was not liable for HomEq's or Quantum's subsequent negligence. The plaintiff argues that her own evidence shows that EquiFirst still owned the loans on May 14, 2007 and February 20, 2009.

Stacy's declaration states that, "[o]n March 30, 2007, EquiFirst sold both of the [plaintiff's mortgage] Loans to Sutton Funding, LLC," and, "[o]n May 1, 2007, EquiFirst transferred the servicing of both of the Loans to HomEq Servicing Corporation." (Docket No. 18 ¶¶ 3, 5.) The declaration further states:

> EquiFirst was not, at any point in time, the creditor on the Loans during the periods of time in which the Loans were serviced by HomEq Servicing Corporation or by Quantum Servicing Corporation. . . . After EquiFirst transferred the servicing of both Loans to HomEq Servicing Corporation on May 1, 2007, EquiFirst did not have, and EquiFirst continues to not have any ownership

6

> interest in the two Loans or the two corresponding liens on the
> subject property.

(*Id.* ¶¶ 6-7.)  But, "[b]ecause MERS was the beneficiary on the relevant security instruments, no assignment was prepared or recorded in the Register's Office of Davidson County, Tennessee." (*Id.* ¶ 4.)

In opposing the assertions contained in this declaration, the plaintiff relies on several documents.  First, the plaintiff has submitted two "Validation of Debt" letters that she received from HomEq, one for each loan, both dated May 14, 2007.  These letters, which are dated six weeks after EquiFirst's claimed sale date, state that HomEq "is responsible for providing monthly remittance processing . . . on behalf of *the current owner of the loan EquiFirst*." (Docket No. 68, Exs. 3-4 (emphasis added).)  The plaintiff has also submitted five largely identical notice-of-default letters from HomEq, dated February 15, 2008, August 15, 2008, October 16, 2008, January 19, 2009, and February 19, 2009, each of which states that "Barclays Bank PLC" is the Primary Loan's "current creditor/owner."  (*Id.*, Exs. 6-7.)  The plaintiff points out that EquiFirst, which was formally dissolved as of June 2010, was owned, via a string of wholly owned subsidiaries, by Barclays Bank PLC ("Barclays").[3]  (*See* Docket No. 4 at 1 (EquiFirst's corporate disclosure statement).)  Finally, the plaintiff has submitted a document included in HomEq's initial disclosures titled "Communication History," which appears to be an internal log of events and communications related to the plaintiff's loan file.  (Docket No. 68,

---

[3] The plaintiff's Amended Complaint added Barclays as a defendant.  (*See* Docket No. 50 ¶ 7.)  Soon after, however, the plaintiff voluntarily dismissed Barclays without prejudice, because she was unable to serve process on it.  (Docket No. 59.)

Ex. 5.) It contains an entry, dated February 20, 2009, labeled "comment log." In the "description" column, the entry states: "INVESTOR 394 EQUIFIRST BBPLC FORECLOSURE IN THE NAME OF: BARCLAYS CAPITAL." (*Id.*)

The court finds that, at least at this stage in the litigation, the plaintiff's documents are sufficient to create a genuine issue for trial regarding when EquiFirst sold the loans. Significantly, the defendant's sole piece of evidence is the self-serving declaration of its own employee, which contains the bare assertion that EquiFirst sold the loan to Sutton in March 2007. The defendant has not, for example, attached any supporting documentary evidence of that sale or submitted any relevant testimony from Sutton or HomEq.

In opposition, the plaintiff has produced a letter from HomEq stating that EquiFirst was still the creditor in May 2007.[4] Furthermore, the "Communication History" document states that, as of February 2009, the "investor" for the plaintiff's loan was "EQUIFIRST BBPLC." Presumably, "BBPLC" refers to Barclays Bank PLC. The document is ambiguous, but, construed in the light most favorable to the plaintiff (particularly in the absence of countervailing evidence regarding the proper interpretation of the document), it indicates that EquiFirst had some interest in the loan as of February 2009. It also suggests that HomEq might have equated EquiFirst with Barclays Bank PLC in its records. In that event, the five notice-of-default letters naming Barclays as the Primary Loan's creditor might support the conclusion that EquiFirst

---

[4] EquiFirst argues that this letter, which was not created by EquiFirst, was mistaken. (Docket No. 74 at 9.) Although that is certainly possible, at summary judgment, the court must view the evidence in the light most favorable to the plaintiff; thus, the court cannot simply assume that the letter contained mistakes.

owned the loan throughout 2008 and early 2009.

In sum, after reviewing the parties' evidence, a reasonable juror could conclude that EquiFirst owned the loans during the relevant time periods. On this record, summary judgment is inappropriate.[5] Moreover, although the plaintiff does not argue that she needs time for additional discovery, the court believes that the defendant's Motion for Summary Judgment is premature. The parties have not had a full and fair opportunity to engage in discovery. In fact, a discovery deadline has not even been set in this case, for various reasons apparent in the case record. Given the apparent lack of transparency regarding which defendant owned the plaintiff's loans at any given time, the court believes that it would be inappropriate to resolve the instant factual issue before the close of discovery.

Finally, the defendant argues that the court must disregard the plaintiff's documents because she has not properly authenticated them. (Docket No. 74 at 6-7.) It is true that, at summary judgment, parties must submit evidence that would be admissible at trial. *See* Fed. R. Civ. P. 56(c), (e). Federal Rule of Evidence 901 requires that, to be admissible, documents must

---

[5] The defendant argues that the plaintiff does not oppose entry of summary judgment in favor of EquiFirst on her RESPA and wrongful foreclosure claims. (Docket No. 74 at 2.) But the Amended Complaint does not seek to hold EquiFirst liable for any RESPA violations, and it does not contain a separate wrongful foreclosure claim. (*See* Docket No. 50 ¶¶ 55-76.)
The defendant further argues that, because the plaintiff's brief does not sufficiently address the issue, she has waived any argument that EquiFirst is vicariously liable for the servicers' negligence regarding the Forbearance Agreement. (Docket No. 74 at 8.) The court disagrees. First, the defendant's initial motion papers did not mention the plaintiff's Forbearance Agreement claim, so the plaintiff could not possibly have waived any arguments by failing to discuss that claim. Second, the plaintiff argues that the "Communication History" document shows that EquiFirst owned the loan in February 2009, the month before she signed the Forbearance Agreement. The clear implication is that EquiFirst owned the loans during the time period relevant to the Forbearance Agreement claim.

9

be accompanied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); *see also id.* 901(b)(1) (explaining that a matter can be authenticated by "[t]estimony [from a witness with knowledge] that a matter is what it is claimed to be"). Consequently, the Sixth Circuit has repeatedly stated that documents submitted in support of a summary judgment brief must be properly authenticated. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (noting the Sixth Circuit's "repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)"); *Baugham v. Battered Women, Inc.*, 211 Fed. Appx. 432, 441 n.5 (6th Cir. 2006) ("[T]he documents Plaintiffs submitted in support of their opposition motion were neither signed nor authenticated and, therefore, are inadmissible evidence for purposes of summary judgment."); *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 532 (6th Cir. 2002) ("[The] memo [submitted by the defendant] was not accompanied by an affidavit or document that attested to its validity or authenticity. . . . '[D]ocuments submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded.'").

But Federal Rule of Civil Procedure 56, as amended effective December 1, 2010, provides that, "[i]f a party fails to properly support an assertion of fact," the court may "give an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(e)(1). The Advisory Committee's notes to the 2010 amendments state that, "[i]n many circumstances[,] this opportunity will be the court's preferred first step." Here, nothing suggests that the documents submitted by the plaintiff are actually inauthentic, and the defendant does not dispute that the plaintiff *can* authenticate the documents. Indeed, the Bates label on the "Communication

History" document clearly indicates that it was produced by defendant HomEq. (*See* Docket No. 68, Ex. 5.) Accordingly, the court will give the plaintiff an opportunity to submit declarations authenticating the documents.[6]

## CONCLUSION

For all of the reasons discussed above, the defendant's Motion for Summary Judgment will be denied, although EquiFirst is free to file a renewed motion after the close of discovery. The plaintiff will be ordered to file declarations that properly authenticate the documents that she submitted in support of her summary judgment opposition.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] It should be enough (1) for the plaintiff to declare that the letters are true copies of letters that she received and (2) for her attorney to declare that the Bates-labeled documents are true copies of documents that HomEq produced in its initial disclosures.